STEPHEN T. NICKERSON & another *vs.* JAMES SWETT & others.
JAMES SWETT & others *vs.* STEPHEN T. NICKERSON & another.

Barnstable.  March 4, 1881; Nov. 21, 1882. — Sept. 10, 1883.  DEVENS & HOLMES, JJ., absent.

An unincorporated insurance association agreed to lend a sum of money to a partnership, on interest at six and a half per cent per annum, and it was understood that, if the money was not repaid within six months, the rate of interest from that time should be seven per cent. The money was lent, and a note signed by the partnership, payable on demand, with interest at six and a half per cent, was given, with A. as a surety. At the expiration of the six months, the note was not paid, and the secretary of the insurance association, who was also a member of it, wrote in the body of the note a statement, that from the end of the six months interest was to be at the rate of seven per cent. One payment of interest was afterwards made at the higher rate, and the partnership soon afterward failed. The surety brought a bill in equity to restrain the insurance association from negotiating the note with his name on it as surety; and the insurance association brought a cross bill to have the words added by its secretary erased from the note. It was found as a fact, that the secretary had no authority to alter the note ; that he did it in good faith, and under a mistake of fact; and that the surety had not been injured. *Held,* that the surety's bill must be dismissed, and the relief sought by the cross bill granted.

W. ALLEN, J.  In May, 1876, the Wellfleet Insurance Company lent to the Union Wharf Company $5000, and took therefor the note of the wharf company, with Stephen T. Nickerson and Francis Nickerson as sureties, payable on demand, with interest at the rate of six and one half per cent per annum. Interest at that rate was paid for six months, when the words "Interest to be at the rate of 7 per cent per annum from

November 1, 1876," were added to the body of the note, and interest at that rate was paid for the six months ending in May, 1877. In October, 1877, the wharf company became pecuniarily embarrassed, and an extension of time was given to the company by its creditors, including the insurance company. The Nickersons then gave a writing, under seal, consenting to such extension, and agreeing that their liability upon the note should not be affected by it, and that they would pay the note if it was not paid according to the tenor of the agreement of extension, and at the same time they deposited with the insurance company certain stocks as security for the payment of the note.

The first suit is a bill in equity by the Nickersons, the sureties, for relief, upon the ground that they were discharged from their liability as sureties by reason of a contract between the two companies made before the note was given, in regard to the interest which should be paid upon it, and the subsequent payment of interest under it; and by reason of the alteration in the note after it was delivered. The second suit is a cross bill by the insurance company, and seeks to have the words which were added to the note stricken out, for the reason that they were written by mistake, and without the authority of the plaintiffs.

The cases were heard by a single justice, and come up on appeals from decrees ordered by him, with a report of the evidence. The decree in the first case ordered the bill to be dismissed. In the second case, a decree was entered in accordance with the prayer of the bill.

One question is presented in both cases, whether the sureties were discharged. As the answer to this question must depend upon the evidence, it is not important to consider particularly the allegations of the pleadings.

There was no express agreement between the insurance company and the wharf company except the note; but in the negotiations between the companies in regard to the loan, it was understood that the money would not be wanted for more than six months, and that interest should be at the rate of six and one half per cent per annum, and that, if the loan should be continued for more than six months, interest after that time

should be paid at the rate of seven per cent per annum. An agreement or understanding to this effect would be implied from the conversation between the parties. The money was not paid or demanded in six months, and after that time the wharf company paid the increased interest. This verbal agreement, and the payment of the extra interest in accordance with it, in no way affected the note, which was the only contract to which the sureties were parties, or their rights or liabilities under it. It is difficult to see how an action could be maintained against the wharf company upon the verbal agreement. It was not a promise to pay interest upon the . note, but upon the loan in case it should be extended beyond six months; and, if it was not merged in the subsequent written contract, it could subsist only as a promise distinct from, and independent of, the note. There was no agreement which could in any way affect the note, or the right of the makers to pay it, or of the payee to sue it, at any time, or the amount which could be recovered upon it. Even if the payee had been induced not to sue the note by the extra interest promised or paid, the sureties would not have been affected, as there was no agreement to extend the time of payment. There is no ground for holding . that the sureties were discharged in consequence of any verbal agreement between the principal parties, or of any payment of money between them; which could operate as a fraud upon the sureties, or affect the contract to which they were parties.

The words added to the note were not put there with the consent of the sureties, and, if they stand as part of the note, would constitute a material alteration of it, and operate to discharge the sureties, because the effect would be to destroy the original note, and substitute for it another to which the sureties are not parties. *Prima facie*, this would be the effect. The words were so written as apparently to form part of the note, while it was in the custody of the payee, and by its agent, who had the custody. The inference from these facts, unexplained, would be that the words were written by the authority of the payee, and with the intention of altering the note, and the payee would not be permitted to say that the note was not altered. But the payee contends that it appears from the evidence that it did not authorize an alteration of the note, and

that the words were written under such a mistake that they ought not to stand as part of the note, but should be stricken from it.

It appears that the words were written by one Kemp, who was the secretary of the payee, and its agent for the purpose of receiving payments of interest upon it. He had no authority to make or change any contract, or to alter the note. The facts that he was a member of the association, and that it was not an incorporated body, gave him no authority. After the expiration of six months from the date of the note, he believed, from information received from Dyer, the agent of the wharf company, and from other sources, that all the parties to the note had agreed that the loan should be continued longer, and that interest thereafter should be paid at the rate of seven per cent per annum; and in this belief, and to express the agreement of all parties to the note, he wrote the words. In fact there was no such agreement. The only understanding was the original one between the principal parties, that, if the loan should be continued more than six months, the interest should be increased. Kemp made the writing in the reasonable and the mistaken belief that it expressed the agreement of all the parties to the note.

It is immaterial whether the payee can show, as it introduced evidence to show, that the writing was a mere memorandum made by Kemp for his own guidance, or whether the conclusive inference is that it was made as a part of the note. In the former case, the act might be one within the scope of the agent's authority, because it would not be an alteration of the note; in the latter case, if held conclusively to have effect only as an alteration of the note, it would not be within the scope of his agency; and in either case, the act would have been done under a mistake as to the contract between the parties, and their consent to it, and the authority of the agent. The question is not whether the insurance company is liable to the sureties for injuries resulting to them from the conduct of its agent; it is, whether the agent has done an act which of itself estops the payee from denying that it has altered the note. If any act of an agent of the payee with authority only to hold and collect the note for his principal can have that effect, it is clear that

an act of such an agent, which is done without fraud and in good faith, and under the mistaken belief that he is thereby expressing the contract and acting with the consent of all the parties, cannot operate as an alteration of the contract by the principal. It may well be that the principal would be liable for any actual injury which might be occasioned to the sureties or to other parties by the act of the agent. It does not follow, because the principal may be liable for a negligent or wrongful act of his agent within the scope of his agency, that therefore the agent may make or change the contract of his principal, or do any act which would operate as an abrogation by the principal of a contract, and the destruction of all rights under it. In this case, the sureties have not been injured, and they do not ask the court to protect them from actual injury, but they ask to be absolved from their contract on account of an act of the agent which, indeed, might have been to their injury, but which in fact has done, and can do, them no harm.

As the words appear upon the note, and apparently form a part of it; as they were put there while the note was in the custody of the payee, and by its agent, but an agent who had no authority to make any alteration of the note or add any words to it; as they were put there without fraud and in good faith, and under a mistake of fact as to the existence of the contract they expressed and the consent of the parties to have them placed there ; and as the sureties have not been injured, and cannot suffer injury if the note is returned to its original and true condition, the words should be stricken from the note. See *Homer* v. *Wallis*, 11 Mass. 309; *Nevins* v. *De Grand*, 15 Mass. 436; *Smith* v. *Dunham*, 8 Pick. 246; *Adams* v. *Frye*, 3 Met. 103; *Willard* v. *Clarke*, 7 Met. 435; *Ames* v. *Colburn*, 11 Gray, 390; *Thornton* v. *Appleton*, 29 Maine, 298; *Kountz* v. *Kennedy*, 63 Penn. St. 187.

Other aspects of the case have been presented in argument, which it has become unnecessary to consider.

*Decrees affirmed.*

*J. M. Day*, for Nickerson and another.
*J. C. Dodge*, for Swett and others.