JOSEPH MARTIN et al., Appellant, v. THE TRADESMEN'S INSUR-ANCE COMPANY, Respondent.

Where an insurance company in issuing a policy deals with a party who remains in possession of it after execution, and is alone entitled to receive the amount thereof in case of loss, it is authorized to assume that such party has power to consent to such changes in it before breach, as will inure to the benefit of the insured. This is especially the case when the proposed alteration can neither injuriously affect the right of enforcing the contract or change the application of the moneys collectible thereon.

An alteration of a contract made by one of the parties, or a third person without the consent of the other party, and while the contract is out of his hands, has no effect as to him, and the contract remains as it was originally, provided that the nature and extent of the alteration can be clearly ascertained, and it can be seen what the contract was at the time it was executed.

At the request of an insurance broker, apparently acting on behalf of mortgagees, defendant issued and delivered to the broker a policy of marine insurance upon the mortgaged property, which stated that it was issued on account of plaintiffs' loss, if any, to be paid to the mortgagees, and thereafter at the request of some one presumably representing the mortgagees, and upon the statement that G. owned the property, plaintiffs' names were erased by drawing a line through them, leaving them, however, perfectly legible, and the name of G. was interlined above them, and after the names of the mortgagees was inserted "to the extent of their interest, and balance, if any, to John Butler." The interest of the mortgagees was the full amount insured. G. in fact had the legal title to the property, he holding it in trust however for plaintiffs and Butler. *Held,* that an action for a destruction or conversion of the policy was not maintainable, as the alteration was not tortious, and plaintiffs suffered no damage therefrom.

(Argued February 4, 1886 ; decided March 2, 1886.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, in favor of defendant, entered upon an order made December 19, 1883, which overruled plaintiffs' exceptions and directed judgment on an order dismissing the complaint on trial. (Reported below, 17 J. & S. 416.)

This action was brought to recover damages for the alleged conversion or destruction of a policy of insurance.

The material facts are stated in the opinion.

*W. H. McDougall* for appellants. The policy was absolutely canceled or destroyed by the defendant, and the act constituted a conversion of the policy for which the defendant is liable in this action. (Pars. on Ins. 138; *Fanshaw* v. *Chabert*, 6 Moore, 386; *Campbell* v. *Christie*, 2 Stark. 57; *Chesley* v. *Frost*, 1 N. H. 145; *Outhouse* v. *Outhouse*, 13 Hun, 130; *Murray* v. *Burling*, 10 Johns. 172; Marsh. on Ins. 245-6.) The destruction or cancellation of the policy, if only partial, gave the plaintiffs a right of action for conversion or damages. (Waterman on Trespass, 12.) The policy of insurance issued by the defendant and paid for by the plaintiffs became the absolute property of the plaintiffs the moment it was signed by the proper officers. (Marsh. on Ins. 210; *Whitaker* v. *Farmers' Union Ins. Co.*, 29 Barb. 312.) The policy of insurance was completely canceled as to the plaintiffs. (*Masters* v. *Miller*, 4 T. R. 32.) The measure of damages in this case was *per se* the amount insured, the plaintiffs having shown that they had an insurable interest. (*McLeod* v. *McGhie*, 2 Scott's N. R. 604; *Outhouse* v. *Outhouse*, 13 Hun, 130; *Thayer* v. *Manly*, 73 N. Y 305.)

*Joseph A. Shoudy* for respondent.

RUGER, Ch. J. The evidence at the close of plaintiffs' case tended to show the following facts: At the solicitation of an insurance broker, apparently acting in behalf of mortgagees, on May 22, 1880, the defendant issued and delivered an insurance policy to such broker reading, so far as the part material to

this discussion is concerned, as follows: "Tradesmen's Insurance Company of New York on account of Martin and Kaskell, in case of loss to be paid in funds current in the city of New York to the Harlan & Hollingsworth Co., of Wilmington, Del., do make insurance and cause $5,000, to be insured upon the body, tackle, apparel and other furniture of the steam-boat *Adelaide*," etc. On June eighteenth, thereafter, some one also presumably representing the mortgagees, presented the policy to the defendant, and requested it to erase the names of Martin and Kaskell, and insert that of John Garvey in place thereof, upon the ground that Garvey was the owner of the steamer when insured, and such alteration seemed necessary to validate the policy. The defendant thereupon drew a line with a pen through the words "Martin and Kaskell," and interlined above them the words "John Garvey," and at the same time also inserted the words "to the extent of their interest, and balance, if any, to John Butler," after the words "Wilmington, Del.," leaving, however, the original language of the policy as legible as before the alteration. It was then re-delivered to the person producing it, and returned to the Harlan & Hollingsworth Company, who, from its original execution to the time of the trial, presumptively retained its possession. It further appears that the boat was purchased in May, 1879, of the Harlan & Hollingsworth Company by Martin, Kaskell and one Butler, but for certain reasons it being desirable to conceal Butler's interest in the transaction, the bill of sale was taken in the name of Martin and Kaskell alone, one-half to each. Subsequently and in November, 1879, Butler becoming desirous of having his interest in the boat protected by some written evidence, requested Martin and Kaskell to convey it to John Garvey in trust for the then owners; and thereupon a bill of sale of the boat was executed by Martin and Kaskell to Garvey and was delivered to some one for him, and he, so far as appears, retained it until the time of the trial. After the purchase of the boat in 1879, the plaintiffs took possession and employed it in running between Long Branch and New York, in the transportation of passengers until June 19, 1880, when it was sunk

and lost, in the Hudson river through a collision with another boat. It also appeared that the plaintiffs advanced from the earnings of the boat to the Harlan & Hollingsworth Co., part of the premiums required to procure $20,000 insurance, and the same was effected in equal amounts of $5,000 each, in the defendant's and three other companies, and that the Harlan & Hollingsworth Co. was, at that time, and until after the loss of the boat continued to be, the holders of mortgages thereon, executed by Martin and Kaskell to the amount of the entire insurance. It also appeared that the Harlan & Hollingsworth Co received from the respective insurance companies after the loss, upon the several insurance policies referred to seventy five per cent of the gross amount thereby insured, and applied the same upon their mortgages, leaving due thereon the sum of $5,000, that being precisely the amount remaining unpaid upon such policies.

On this state of facts the plaintiffs claimed to recover upon the ground that the act of the defendant in erasing the name of "Martin and Kaskell," from the policy, and inserting in place thereof that of "John Garvey," constituted a conversion of the policy as against them, rendering the defendant liable to the plaintiffs for the amount thereof, or such other amount as might represent their interest therein.

Upon the trial the complaint was dismissed upon the ground that there was no proof of any damages, sustained by the plaintiffs from the alteration of the policy. The judgment of the trial court was affirmed on appeal, and from such affirmance this appeal was taken.

We are of opinion that these judgments should for several reasons be affirmed. The form of the policy as originally drawn was somewhat peculiar, and was not probably such as would have been adopted by the parties, had they been well advised. Although the interest of Martin and Kaskell alone is insured, they were not then legal owners, and were never in equity, sole owners of the boat, and the policy does not provide for any recovery by them of the amount of the insurance. The plaintiffs probably had an insurable interest in the boat,

but serious questions exist as to the value and extent of such interest, and the rights of Butler their co-tenant in the proceeds of the policy.

Inasmuch as all of the interests, both legal and equitable, had been united in John Garvey, as a trustee for all parties before the execution of the policy, it would obviously have been the safer plan to have named his, as the insurable interest in the original instrument. As the policy was drawn, it was undoubtedly the interest of Martin and Kaskell alone that was insured, yet in case of loss the amount thereof was required to be paid unconditionally to the Harlan & Hollingsworth Company, and it was apparently the sole beneficiary of the contract. Its right of recovery thereon in case of loss would undoubtedly be defeated, by the want of an insurable interest in Martin and Kaskell, or any violation by them of the conditions of the policy, but the Harlan & Hollingsworth Company having paid a portion of the premium required, and having authority to effect insurance for their own benefit, and receiving and holding the policy issued for that purpose, with an interest therein covering the entire amount of the insurance, had for the purpose of protecting such interest, apparent authority to procure such an alteration of the policy as would promote the object intended in effecting it. So far as the defendants knew they were the parties solely interested in the transaction, and until after notice of the rights or claims of other persons, could safely deal with the parties procuring the insurance, in reference to any change or modification of its terms. If the mortgagees were in fact the agents of the plaintiffs in procuring such insurance and violated their instructions either in procuring it, or changing its terms afterwards to the prejudice of their principal, it would render them liable for any damages resulting therefrom. When, however, the insurer in issuing a policy deals with a party who remains in possession of the instrument after execution, and is alone entitled to recover the amount thereof, in case of loss, he is authorized to assume that such party has power to consent to such changes in it before breach as will inure to the benefit of the insured, and tend to perfect the validity of the contract.

This would seem to be especially the case, when the proposed

alteration could neither injuriously affect the right of enforcing it, or change the application of the moneys collectible thereon. Under both forms of the contract, the moneys in this case were recoverable only by the Harlan & Hollingsworth Company, and would be, when received, applicable only to the satisfaction or reduction of the plaintiffs' indebtedness to them.

Thus in any event the plaintiffs would, under either form of the policy, receive what they contracted for, and as it turned out, have no cause of complaint, whatever might have been the case under a different state of circumstances.

The legal title of the boat was unquestionably in John Garvey, and he held it as trustee for Martin, Kaskell and Butler. The change made in the policy simply affected the form of the contract, and not the equitable rights of the parties, and seems to have been made in good faith simply for the purpose of validating it. (*Myer* v. *Heneke*, 55 N. Y. 412.)

There was obviously no intent on the part of either of the parties to the transaction, to effect a destruction or cancellation of the instrument by its alteration, but it was made with intent solely to remedy a real or supposed defect, which threatened its validity. No interest which the plaintiffs might have in the contract was impaired by the erasure complained of, for if it was made by their authority, they had no right to complain, and if not, and such authority was necessary to be obtained, the alteration did not vitiate their contract, or impair their right to enforce it. The rule is well established that an alteration of a contract under which a plaintiff claims, made by a defendant or some third party, without the plaintiff's consent, and while the contract is out of plaintiff's hands, has no effect, and the contract will remain as it originally stood, provided the nature and extent of the alteration can be clearly ascertained, and it can be seen what the contract was at the time it was executed. (Addison's Law of Cont. 286, and authorities cited; *Nichols* v. *Johnson*, 10 Conn. 192; Phillips on Ins., §§ 114, 115; *Van Brunt* v. *Eoff*, 35 Barb. 501.)

We are, therefore, of the opinion that the alteration in question was not a tortious act on the part of the defendants, and did not constitute a conversion of the policy. We are also of

the opinion that the plaintiffs have suffered no damage from the act complained of.

At the time of the destruction of the *Adelaide* they had no interest in the contract, except to have the moneys recoverable thereon collected and applied in reduction of their indebtedness to the mortgagees, and for the purpose of effecting this object, the mortgagees were their agents, and responsible to them for the manner in which that right was enforced. (*Cone* v. *Niagara Ins. Co.*, 60 N. Y. 619.)

The whole insurance moneys were no more than sufficient to pay the mortgage and would in no event afford a surplus recoverable by the owners of the property. But however this may be, we have seen that the plaintiffs' remedies upon the policy were not impaired by the alteration made in it, and, therefore, they cannot have suffered damages by reason thereof.

The judgments of the courts below should be affirmed.

All concur.

Judgment affirmed.