LUCIUS GLEASON, RESPONDENT, *v.* FANNIE M. HAMILTON, APPELLANT.

*Alteration of an instrument by an attorney — when the client, not relying upon the alteration, may recover — disregarding errors below.*

William T. Hamilton and Fannie M., his wife, executed a mortgage to Lucius Gleason, as security for the payment of all notes of a mining company (in which Hamilton and one Thompson were largely interested) indorsed by Hamilton and Thompson and owned by Gleason, for all renewals thereof, and for all such notes upon which Gleason was an indorser, and for their renewals.

After the mortgagors had acknowledged the execution of the mortgage the attorney of Gleason inserted a further clause making it a security for all notes or drafts indorsed by Hamilton, then or thereafter owned by Gleason, or on which Gleason might be liable as indorser.

Fannie M. Hamilton, upon a foreclosure of the mortgage, set up, as a material alteration, the clause inserted by the attorney. Gleason had no knowledge of the alteration until after the commencement of the action of foreclosure, his recovery in which was not predicated upon the alteration, but was based upon the clause as it stood originally.

*Held*, that Gleason was entitled to recover.

That as he did not rely upon the disputed clause; had never intended to commit a fraud; had not procured or consented to the alteration, and as the instrument was still intelligible, there was no equitable reason why he should not enforce his security to the extent to which, as originally drawn, it covered the indebtedness due to the plaintiff.

That the effect of the alteration, although made by Gleason's attorney, was, under the circumstances, the same as if it had been made by a stranger.

That Gleason's right to recover was further strengthened by an instrument subsequently executed by the parties whose legal effect indicated the defendant's

intention to have been to assume a liability corresponding with that created by the disputed clause.

That section 1003 of the Code of Civil Procedure applied to actions in equity, and authorized the appellate court to disregard errors committed on the trial, where it was of opinion that substantial justice was done by the judgment below.

APPEAL by the defendant Fannie M. Hamilton from a judgment of the Supreme Court, as resettled, and after a trial of the action, and of certain issues ordered to be tried by the court and a jury at the Onondaga Circuit, entered in the office of the clerk of the county of Onondaga on the 3d day of July, 1891, adjudging that a mortgage given by the defendant to the plaintiff was not invalidated by the insertion of a clause therein, to wit : " Also any and all other notes or drafts made or indorsed by said Hamilton, now or hereafter owned by said second party (Lucius Gleason), or upon which he may be liable as indorser," after the first execution of said mortgage, and directing a sale of the premises covered by it; and also an appeal from an order, entered in said clerk's office on the 24th day of March, 1891, denying a motion for a new trial upon the minutes.

The action was brought to foreclose a mortgage bearing date January 13, 1885, on property on James street, Syracuse, described in the complaint, executed by the defendant and acknowledged before John C. Keeffe, notary public, whose certificate of acknowledgment bears date 13th of January, 1885. The mortgage was recorded March 23, 1885. The complaint alleged the incorporation of the El Oro Mining Company under the general manufacturing act of the State of New York of 1848; that it executed certain promissory notes, one of June 3, 1884, for $14,000 ; another of June 20, 1884, for $10,000 ; another of July 3, 1884, for $25,000 ; another of May 15, 1884, for $10,000 ; another of July 30, 1884, for $26,000 ; another of June 20, 1884, for $13,000 ; another of August 22, 1884, for $20,000 and a draft of August 22, 1884, for $10,624.43 ; that the several notes and drafts were indorsed, in each case, by William N. Thompson and William T. Hamilton, or one of them ; that the said notes and draft had been duly presented for payment, and payment had been refused and the said notes and draft were duly protested for non-payment. It stated that a certain mortgage had been given by Fannie M. Hamilton, on January 13, 1885, to secure the payment of such notes and draft, covering certain real estate described in

the complaint and demanded a foreclosure thereof. The consideration named in the mortgage was $30,000. The condition in the mortgage, as recorded, was as follows: "This grant is intended as a security for the payment of any and all notes made by the El Oro Mining Company, and indorsed by William T. Hamilton and William N. Thompson, and now held and owned by the party of the second part; and of any and all renewals of said notes, and also to secure said second party from all loss by reason of his liability as indorser upon any and all notes made by said El Oro Mining Company, and indorsed by said Hamilton and Thompson, and any and all renewals thereof; also any and all other notes or drafts made or indorsed by said Hamilton, now or hereafter owned by said second party, or on which he may be liable as indorser." Defendant, in her answer, alleges: "That said plaintiff altered, or caused to be altered, said mortgage, in a material part, after her signature was affixed thereto, and he had obtained possession thereof by inserting at the end of the condition thereof the following words: 'Also any and all other notes or drafts made or indorsed by said Hamilton, now or hereafter owned by said second party, or on which he may be liable as indorser.' That said alteration was not brought to her knowledge in any manner after the same was made, nor did she ratify the same or acknowledge such mortgage after such alteration; and said plaintiff now claims a benefit and an advantage over defendant under and by virtue of such alteration. That such alteration was made for the purpose of obtaining a benefit for the plaintiff, and was fraudulent as to this defendant; and said mortgage, if any such exists, thereby rendered void and of no effect." Other defenses are stated in the answer, among others that the mortgage "was so executed and delivered wholly without any consideration therefor." On the 7th of September, 1889, at a Special Term, an order was made settling issues, and directing a trial thereof at the Circuit Court. The questions and the verdict of the jury thereon were as follows:

*First.* Did the defendant execute and deliver to the plaintiff the mortgage referred to in the complaint? Answer. Yes.

"*Second.* Was any consideration paid, or did any pass to the defendant or any other person, for the execution and delivery by her of the mortgage mentioned in the complaint? Answer. Yes.

"*Third.* After the execution and delivery of the mortgage referred to in the complaint, was said mortgage changed by writing therein in the condition thereof the following clause: 'Also any and all other notes or drafts made or indorsed by said Hamilton, now or hereafter owned by said second party, or on which he may be liable as indorser?' Answer. Yes.

"*Fourth.* Was said clause written in said mortgage without the knowledge or consent of the said defendant, Fannie M. Hamilton? Answer. No.

"*Fifth.* Did the said defendant, Fannie M. Hamilton, after the following clause was written in said mortgage, 'Also any and all other notes or drafts made or indorsed by said Hamilton, now or hereafter owned by said second party, or on which he may be liable as indorser,' assent to the same or consent that the same should form a part of said mortgage? Answer. Yes."

A motion for a new trial "upon the minutes of the court to set aside the verdict of the jury, rendered upon the first, second, fourth and fifth of said issues, and each of them, and that a new trial be granted as to said last-mentioned issues, and each of them upon the grounds" specified, was made at the circuit and denied. Subsequent to such order denying a motion for a new trial, "the issues joined in this action were brought to trial at a Special Term of this court, and the following proceedings were thereupon had: The stenographer's minutes of the evidence and proceedings before the jury upon the trial of the issues in this action before them, and the exhibits therein referred to, and the verdict of the jury upon said issues, were introduced in evidence; said evidence was received subject to the exceptions and objections in said minutes, the same rulings being deemed made and exceptions taken at Special Term as at the circuit. No further proof was offered by either party, and the foregoing case contains all the evidence given and proceedings had at the circuit and Special Term upon the trial of this case."

The Special Term found the execution of the mortgage and the consideration therefor, and the extent of the indebtedness mentioned in the complaint, and the existence of the several notes and drafts mentioned therein, and further, as follows: "10. That on the 13th of January, 1885, for a valuable consideration, and for the purpose of securing the payment of the said several notes and drafts, the

defendant, Fannie M. Hamilton, executed, duly acknowledged and delivered to the plaintiff a mortgage, whereby she granted, bargained and sold to the said plaintiff the following described premises, with the appurtenances thereto. (Here follows description.) 11. That by the terms of said mortgage it was provided that it was intended as a security for the payment of any and all notes made by the El Oro Mining Company and indorsed by William T. Hamilton and William N. Thompson, and held and owned by the plaintiff herein, and of any and all renewals of said notes, and also to secure him from all loss by reason of his liability as indorser upon any and all notes made by the said El Oro Mining Company and indorsed by said Hamilton and Thompson, and any and all renewals thereof; also any and all other notes or drafts made or indorsed by said Hamilton which were owned at the time of the execution of said mortgage, or which thereafter should be owned by the plaintiff, on which he might be liable as indorser; that the said mortgage contains a further condition that, in case default should be made in the payment of the moneys thereby intended to be secured, or in the payment of the interest thereof," and that a foreclosure and sale should take place. It was also found that none of the notes or drafts had been paid, and that the defendant had failed to comply with the conditions of the mortgage by omitting to pay any of said notes, and "there is now due and justly owing to the plaintiff upon the said notes, draft and mortgage the sum of $128,624.43 of principal, and $48,081.66 interest."

The court also found : "After the execution and delivery of said mortgage hereinbefore described, the same was changed by inserting in the condition thereof the following clause, to wit: 'Also any and all other notes or drafts made or indorsed by said Hamilton, now or hereafter owned by said party, or on which he may be liable as indorser,' and that said clause was written in said mortgage with the knowledge and consent of the defendant, Fannie M. Hamilton, and after the same was written therein she assented to the same, and consented that it should form a part of said mortgage. 16. Said clause was inserted in said mortgage without the knowledge, request or procurement of the plaintiff. After said mortgage had been executed and delivered, he did not learn of its insertion until after the commencement of this action."

The court found as conclusions of law:

"*First.* That the mortgage executed by the defendant to the plaintiff was not invalidated by the insertion of the clause in question after the first execution of said mortgage by the defendant.

" *Second.* That said mortgage was executed and delivered by the defendant to the plaintiff for a valuable consideration, and became, in the plaintiff's hands, a valid security for the payment of the several notes and draft set forth in the complaint."

Special findings were made at the request of the defendant, as follows: "That when said mortgage was returned, executed by the defendant to said Doheny, it did not contain the following clause in the condition thereof: 'Also any and all notes or drafts made or indorsed by said Hamilton, now or hereafter owned by said second party, or on which he may be liable as indorser.'" It was also found: "That said alteration was a material one." Several other requests to find were made, which were refused by the court. Exceptions were taken to the findings, and to the refusals to find.

November 11, 1890, judgment of foreclosure was allowed and entered. Defendant appeals from the order denying the motion for a new trial upon the minutes, and also from the judgment. One of the defenses contained in the answer was to the effect that the " mortgage was given by the wife for a precedent debt of the husband, and that there was no consideration for its execution, * * * the appellant does not claim, therefore, to be entitled to reverse the finding of the jury on that issue because it is against the evidence, or without evidence to support, but only on the ground of erroneous rulings in regard to that evidence. She claims to reverse the findings on the other issues upon the ground they are without evidence to support them, and against the evidence."

The property covered by the mortgage is a tract of land on James street, said to be worth from twenty to thirty thousand dollars. It appeared in the evidence that the El Oro Mining Company is a corporation having a mine in the Republic of Mexico, and that its capital stock is $10,000,000, divided into shares of $100 each. William N. Thompson of New York was the president of the company, and owned something over forty thousand shares of the stock; William T. Hamilton, the husband of the defendant, was its vice-president, and held some thirty-seven thousand shares of the stock. The company

had issued bonds upon its property, some fifty thousand dollars of which the defendant owned in 1884. Some evidence was given tending to show that the stock held by Hamilton was purchased by him with his wife's money, and afterwards turned over to her as collateral for his indebtedness to her. It appears that Hamilton and Thompson, in the fall of 1884, valued the property at something like $2,500,000. In 1884, the Third National Bank of Syracuse held something like $128,000 of the paper of the mining company indorsed by Thompson and Hamilton. The plaintiff became the owner of a large portion of this paper, and indorser upon a large amount of the paper. The mining company was unable to pay the paper when it became due. Mr. Doheny had been counsel for Mrs. Hamilton and Hamilton, and he commenced a negotiation for an extension of this paper, and made efforts to obtain security to induce the extension. An extension was agreed upon on condition that the mining company pay $5,000 per month on its indebtedness, and, as part of the arrangement looking to the extension, the defendant made the mortgage in suit. The mortgage was prepared under the direction of Mr. Doheny by Mr. Petit, then a clerk in Doheny's office. The acknowledgement and certificate thereof was taken and made by John C. Keeffe, a notary public, who for many years was in the employ of the defendant and her husband, and on intimate terms with them. After such acknowledgment it was delivered to Doheny for the plaintiff.

At the time the mortgage was given it seems to have been understood that it should not be immediately recorded. After the mining company failed to pay $5,000 a month, pursuant to the extension, the mortgage was recorded. The evidence tends to show, and satisfactorily supports, the finding that the plaintiff had no knowledge of the insertion of the disputed clause in the mortgage after the execution of the mortgage, and that he first learned thereof after the commencement of this action. The indebtedness which the plaintiff seeks to enforce in this action is described in the mortgage, and the language used therein, as the mortgage was first drawn; it is not necessary to resort to the disputed clause in order to apply the language of the mortgage to such indebtedness.

*W. G. Tracy*, for the appellant.

*Louis Marshall*, for the respondent.

HARDIN, P. J.:

Evidence given before the circuit and before the Special Term satisfactorily establishes the fact that the plaintiff had no knowledge of the making of the alleged alteration prior to the commencement of this action; and that such alteration and addition were made without his personal request or procurement, and without any fraudulent intent on his part. The evidence and findings are entirely satisfactory that the plaintiff did not, and does not, rely upon the disputed words to cover the indebtedness for which the mortgage is sought to be enforced. Under such circumstances, if it be assumed that the alteration or additional clause was inserted by Doheny without an original authority from the defendant, or a reacknowledgment of the execution of the instrument by her after the words were inserted, ought the mortgage as first drawn to be destroyed or held for naught? Clearly the plaintiff never intended any fraud, nor consciously consented to any destruction of the instrument which gave him a lien on the defendant's property as it was first drawn and executed. Notwithstanding the additional words or alterations, the instrument as first drawn was still legible, and its meaning and purport ascertainable; and the added words should be treated "the same as if such alteration had been made by a mere stranger without the privity or consent of the party interested." (*Henfree* v. *Bromley*, 6 East, 309.) The case last cited was referred to approvingly in *Reese* v. *Overbaugh* (6 Cow., 746.) In the latter case the instrument from which the seals were torn had been left with Jackson for safe-keeping, and it was said by the court, in the course of the opinion, that "he had no power to cancel the contract, or to interfere in any other way with the plaintiff's right to recover the remaining balance of $500. In tearing the seals from the agreement, therefore, he did not act as the authorized agent of the plaintiff, but as a stranger." The latter case was quoted approvingly by ANDREWS, J., in *Casoni* v. *Jerome* (58 N. Y., 321), in which case it was held, that the insertion in a bond by a clerk in the Surrogate's Court of words unauthorized did not "relieve the obligors from liability under it, as originally executed."

In *Martin* v. *Tradesman's Insurance Company* (101 N. Y., 498), RUGER, Ch. J., said: "The rule is well established, that an altera-

tion of a contract under which a plaintiff claims, made by a defendant or some third party, without the plaintiff's consent, and while the contract is out of plaintiff's hands, has no effect, and the contract will remain as it originally stood, provided the nature and extent of the alteration can be clearly ascertained, and it can be seen what the contract was at the time it was executed."

In *Bigelow* v. *Stilphen* (35 Vt., 521) the plaintiff's agent received defendant's note for goods, the agent, without the knowledge or assent of either party, so changed the note as to make it joint and several and payable with interest; and when an action was brought upon the note it was held that its principals could recover upon it as it stood before the alteration took place. In the course of the opinion in that case it was said, " clearly it is not just that a man should be deprived of an honest debt, or have the evidence of it destroyed for all beneficial purposes in consequence of the misconduct of a stranger to whose act he did not assent, and of which he had no knowledge ; " and it adds : " It is the intent that gives the act its character and avoids the instrument, and it is difficult to understand why a man who has done no wrong, nor consented that any should be done, should be punished to the extent of the amount of his demand by having his claim canceled by operation of law, solely because another has been guilty of an act for which he ought to be punished. Public policy does not require any such rule." And in *Robertson* v. *Hay* (91 Penn. St. Rep., 242) it was held that the alterations of a mortgage were to be deemed as those of a stranger, although the alterations were made by Gill, who, as agent and attorney of the party, had possession of it. Similar doctrine was held in *Hunt* v. *Gray* (35 N. J. Law, 227), and in *Nickerson* v. *Swett* (135 Mass., 514).

Appellant calls our attention to *Rogers* v. *Vosburgh* (87 N Y., 228); that was a case where the answer alleged " that after the making and delivery of said note, and before the commencement of this action, the note was materially altered by plaintiff without the knowledge or consent of defendants," etc., and it was held that it was error to strike out the answer as sham and frivolous. We think the case does not aid the appellant. And *Benedict* v. *Cowden* (49 N. Y., 396), cited by the appellant, was a case where it was held the material alteration of a note took place by severance of a mem-

orandum from the note which was an essential part of it. We see nothing in the case aiding the appellant.

Our attention is called to *Waring* v. *Smyth* (2 Barb. Ch., 119); in that case it appeared that Waring, the mortgagee, "was guilty of the improper acts of altering a bond and mortgage" and, therefore, he could not foreclose the mortgage, nor could his assignee have any relief to which the assignor would not have been entitled. In that case, however, it was asserted that "an alteration by a stranger without the privity or consent of the party interested will not render the deed void where the contents of the same as it originally existed can be ascertained."

Appellant calls our attention to *Marcy* v. *Dunlap* (5 Lansing, 365); when the mortgage in that case was delivered it did not. describe the defendant's property; subsequently the description was changed; and in an action to reform the mortgage by changing the description from lot 26 to lot H, and for a foreclosure thereof, it was held that the mortgage was vitiated and was incapable of being enforced by the plaintiffs. The case differs widely from the one before us. In the course of the opinion, however, it seems to be stated that the modern cases hold that if the alteration is the act of a mere stranger while the deed or mortgage is out of the possession of the grantee or mortgagee, and without his knowledge or consent, it does not work a destruction of it.

When the mortgage was acknowledged by the defendant it contained a clause to the effect "that the said party of the first part, in consideration of the sum of $30,000, has sold, and by these presents does grant and convey to the said party of the second part," etc.; and the further clause that, "this grant is intended as a security for the payment of any and all notes made by the El Oro Mining Company and indorsed by William T. Hamilton and William N. Thompson, and now held and owned by the party of the second part, and of any and all renewals of said notes; and also to secure said second party from all loss by reason of his liability as indorser upon any and all notes made by said El Oro Mining Company, and indorsed by said Hamilton and Thompson, and any and all renewals thereof."

The lien given to the plaintiff by the mortgage secured the indebtedness mentioned in the language we have just quoted; that

indebtedness has not been discharged, and it is equitable that the mortgage should remain to the extent of $30,000 as collateral to such indebtedness; in the event of that indebtedness being discharged, or a portion of it discharged, it may be claimed, in behalf of the defendant, that the lien as originally created should cease, or be restricted to the amount remaining unpaid on that indebtedness. No such question, however, seems to have been presented at the Special Term or provided for in the formal judgment which was entered; perhaps the defendant, if the mortgage is held valid in virtue of the views already expressed, would be entitled to have the judgment qualified in that respect. We may afford her an opportunity to have the judgment modified by an insertion of such additional provision, if she should be so advised.

In corroboration of the views already expressed, it may be observed that on the 17th of March, 1885, the defendant and the plaintiff entered into stipulations by an instrument under seal, acknowledged on that day before the same notary who took the acknowledgment to the mortgage. In that instrument, which related to the indebtedness of the El Oro Mining Company, held by the plaintiff, and upon which the husband of defendant was liable, it was agreed, among other things, that, "as long as the whole of the net proceeds of said mine are applied to the payment of said paper monthly, provided such monthly payments amount to $5,000 each," no proceedings were to be taken to enforce the payment of the commercial paper of the mining company; and in that instrument it was further provided, viz.: "It is agreed by the subscribers, W. T. Hamilton and F. M. Hamilton, that all property and security held by said Gleason or the said Third National Bank as collateral to the indebtedness or liability of said W. T. Hamilton to said bank or said Gleason shall be held, and the same is hereby pledged to said Gleason as security for the payment of said notes so to be purchased by him, except as hereinafter provided. 5. Upon the completion of the purchase of said notes by said Gleason in the manner aforesaid, the twenty-five bonds of said mining company, and the stock of the Onondaga Iron Company, now held as collateral to said notes, shall be held as collateral, first, to a certain other $30,000 note of the Morris Run Coal Company, on which said Hamilton and Lynch are liable as indorsers, and after

said last-mentioned note is paid, then said securities shall be held as collateral to the other indebtedness of said W. T. Hamilton to said Gleason or said bank." It may be said with considerable force that the effect of these stipulations on the part of the defendant with the plaintiff tend to support the position stated above, that the plaintiff is entitled to hold the mortgage as originally drawn until the indebtedness specified in the original draft of the mortgage is paid. Surely, when the instrument of March 17, 1885, was executed by the defendant, the plaintiff held the mortgage in suit as a security, and it was embraced within the expression "all property and security held by said Gleason * * * as collateral to the indebtedness or liability of said W. T. Hamilton to said bank or said Gleason, * * * and the same is hereby pledged to said Gleason as security for the payment of said notes."

It was insisted upon the trial at the circuit, and at the Special Term and in the argument before us, "that the disputed clause was inserted in the mortgage with the knowledge and consent of the defendant;" and the Special Term found: "That said clause was written in said mortgage with the knowledge and consent of the defendant, Fannie M. Hamilton; and after the same was written therein she assented to the same, and consented that it should form a part of said mortgage;" however, it is insisted in behalf of the appellant that the finding is unsupported by evidence, and that the same is against the evidence in the case.

Mr. Doheny, who was called as a witness in behalf of the *defendant, testified that the mortgage was prepared in behalf of the plaintiff, in his office, under his supervision, he testifies:* "It came back to me executed the day that it was drawn, as I remember it, and at that time the clause referred to was not in the mortgage. Sometime after it came back to me this clause was written in; * * * I returned it to Mr. Hamilton, calling his attention to the interlineations, and asking for a re-execution of it; * * * my recollection is that he took the mortgage and went down to Mr. Hamilton's office, two floors below our own, and called his attention to some language in the addition that had been made; to the fact that we had put it in, and asked that the mortgage be re-executed; and I can tell you, if you wish, what I think his reply was; he said that John (the notary), would go over and

take Mrs. Hamilton's acknowledgment just as soon as he could." A few days after that, the witness continues, that I went "up stairs and found the mortgage in my office; I think I found it on my table in my room, but I am not sure about that; I was also the attorney for Mr. Hamilton, at this time, in various matters." In the course of the examination of the defendant it appeared that she had authorized her husband to transact business for her in respect to the matters involved and inquired into in this action; she testified: "He managed everything; he had everything;" and she added that he represented her in all transactions relating to her property.

Keeffe, the notary, was called, and while giving his testimony on the subject of whether the mortgage was reacknowledged or not, and in answer to the question whether he took a reacknowledgment, he says: "I don't think I did;" and when asked whether he would swear positively, he says: "I don't think I did;" and upon the question being put to him again, viz.: "Q. Will you swear positively that you did not? A. No; I would not swear positively that I didn't; I took a great many acknowledgments about this time." And when this witness was asked if he did not, sometime after the mortgage bears date, meet Mr. Doheny and inform him as to a second acknowledgment from Mrs. Hamilton, and that the mortgage had been left in Doheny's office, his answer was: "I don't remember any such conversation;" he was then asked: "Do you swear that such a conversation did not take place? A. No; I have no recollection of any such conversation;" and the further question was put to him: "Will you answer you didn't have such a conversation? A. I won't swear positively that I didn't, or that I did; I have no recollection of any such conversation; to the best of my recollection I didn't." When the witness, William T. Hamilton, the husband of the defendant, was upon the stand, he detailed the circumstances attending the execution of the mortgage, his knowledge thereof and his conversation with his wife in respect thereto. He admits that Mr. Doheny afterwards called upon him and said that he "wanted to add a word to that mortgage," and he adds, "There were several conversations of the same kind, similar."

On the 11th of November, 1884, the defendant executed a power of attorney to her husband, which was acknowledged on the nine-

teenth of November, wherein she appointed her husband her attorney, with authority as follows: "For me and in my name, place and stead to conduct, carry on, transact and exercise the general control and supervision over all of the property, business and interests of whatever kind and wheresoever situated that I now or may hereafter own, hold claim or be interested in and to make, execute, sign, seal and deliver for me and in my name all bills, bonds, deeds, *mortgages*, notes, leases, specialties or other instruments in writing whatever, which shall be necessary to the proper conducting, carrying on and transacting the business aforesaid, and to do and perform all and every act and deed of whatever name or nature in anywise appertaining to said business, property or interests, binding me as firmly and irrevocably by such deed or performance as if I were myself present thereto consenting, hereby ratifying, confirming and allowing whatever my said attorney shall lawfully do in the premises." This power seems to be very broad, giving him power to execute mortgages and to transact any and all kinds of business for her in respect to all property she then owned or might thereafter own, hold, claim or be interested in. The evidence abundantly shows that she was interested in the Mining Company and that she was affected by its credit, standing and indebtedness. It is not overlooked that she as a witness, and her husband as a witness, gave evidence tending to indicate that the mortgage was not reacknowledged after the clause in question was inserted therein ; however, with all the evidence to which reference has been made before the jury and before the Special Term, we are not prepared to say that the finding of the jury, or the finding of the court that the additional clause in the mortgage was inserted without her assent or subsequent ratification, which is equivalent to original authority. If her agent assented to it, she assented to it. It may not be said that the finding is unsupported by evidence tending to sustain it. As to whether the evidence given by her and given by her husband was sufficient to countervail the evidence to which reference has been made, or not, was a question for the jury and for the trial judge. He saw all the witnesses ; heard all the circumstances we have alluded to, and many others ; he witnessed the searching cross-examinations and saw the bearing of the witnesses under the same, and when we give to his finding of fact such influence as we think, with

his better opportunities to judge of the same, it is entitled to, we are not prepared to say the finding of fact made at the Special Term is contrary to the weight of evidence ; we do not, therefore, feel called upon to disturb it.

The court was authorized to " set aside the findings of the jury, or use some of them, and to make the finding which is now brought in question." (*Hammond* v. *Morgan*, 101 N. Y., 186; *Acker* v. *Leland*, 109 id., 11.)

Numerous exceptions were taken during the progress of the trial before the jury, and apparently were renewed at the Special Term, and numerous exceptions were taken to the findings of fact and law, as made by the trial court, and to the refusals to find, and they have been largely discussed by the appellant before us. We have looked at them ; this is an equity action, and section 1003 of the Code applies ; and in that section it is provided : "An error in the admission or exclusion of evidence, or in any other ruling or direction of the judge upon the trial may, in the discretion of the court which reviews it, be disregarded, if that court is of opinion that substantial justice does not require that a new trial should be granted." The views already expressed, if adopted, seem to warrant the conclusion " that substantial justice does not require that a new trial should be granted."

We forbear an extended examination of the exceptions, and we are of the opinion that the orders and conclusion reached at the Special Term should be sustained.

MARTIN and MERWIN, JJ., concurred.

Order affirmed ; judgment affirmed, with costs.