(15 App. Div. 297.)

WALDORF v. SIMPSON et ux.

(Supreme Court, Appellate Division, Third Department. March 3, 1897.)

1. PRINCIPAL AND AGENT—AUTHORITY OF AGENT—NOTICE.
Defendant purchased a range from the selling agent, and gave his note for the price. The price of the range was printed in the note, but the agent agreed to take less, and indorsed the difference as a credit on the note. After these terms had been arranged the agent presented a printed contract of sale, which defendant signed. The contract stated that the price was the amount printed in the note; that no receipts, discounts, or offsets should be accepted against the note; that "this is the only agreement or stipulation recognized in the purchase and sale of said range, and no alteration of above conditions, or erasure by salesmen, is authorized or will be recognized by the" seller. Defendant retained the range after signing the contract. *Held*, that defendant was chargeable with notice that the agent had no authority to reduce the price of the range, and was liable for the full amount.

2. BILLS AND NOTES—INDORSEMENTS—ERASURE.
The erasure of an unauthorized indorsement on a note, of which lack of authority the maker had notice, is not such alteration as to affect the validity of the note.

3. EVIDENCE—PRESUMPTIONS—ERASURE OF INDORSEMENT.
There is no presumption that a payee erased an indorsement on a note, where the indorsement was made against his orders by his agent, and the note was delivered by the maker to the agent to transmit to the payee, and the note was apparently intact after such erasure.
Herrick and Putnam, JJ., dissenting.

Appeal from Sullivan county court.

Action by George A. Waldorf against James Simpson and Elizabeth Simpson on a note. From a judgment entered on a verdict in favor of defendants, plaintiff appeals. Reversed.

The action is brought upon a promissory note for $69 executed by defendants to the order of the Wrought-Iron Range Company. It was given in payment of a range purchased from the payee through an agent, to whom the note was delivered; and at the same time a written agreement was also signed by the defendant Simpson and the payee, in duplicate, the contents of which are referred to in the following opinion. The defense is that the agent sold the range for $64, and indorsed upon the note, before it was delivered, the sum

of $5, to make it conform to such purchase price, and also 25 cents for his dinner; that, when presented for payment, such indorsement had been so entirely obliterated by chemicals that there was no trace that it had ever been put thereon; that such obliteration rendered the note invalid.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

W. W. Smith (Henry W. Smith, of counsel), for appellant.

T. F. Bush, for respondents.

PARKER, P. J.  I am of the opinion that the contract between the defendant Simpson and the Wrought-Iron Range Company must be found in the papers which were executed by both at the time the range in question was delivered.  The memorandum put in evidence by defendant, without reference to the notice printed in red ink on its back, is, in effect, a bill of sale of the range, in which the terms of the sale are fully stated.  By those terms, the defendant is to give his note for $69, bearing even date therewith, and to become due June 1, 1895, and the range is not to be transferred by defendant until fully paid for; and no receipts, discounts, or offsets are to be accepted against such note of $69.  The company, on its part, guaranties the proper working of the range as therein particularly stated, and to furnish for a period of five years, free of charge, any parts of the range which with ordinary usage get out of repair.  It is also expressly provided in such agreement as follows:

"This is the only agreement or stipulation recognized in the purchase and sale of said range, and no alteration of above conditions or erasure by salesman is authorized or will be recognized by said company."

When defendant Simpson received this agreement from the company, and signed a duplicate thereof, we must presume that he knew the contents thereof.  Without including the printed notice on the back of such paper as part of the contract, or charging defendant with knowledge of its contents, nevertheless, as to the terms of the writing which he then signed, he must (in the absence of any proof of a fraudulent concealment) be held to have understood them, and to be bound by the contract therein expressed.  "A contractor must stand by the words of his contract, and, if he will not read what he signs, he alone is responsible for his omission."  Upton v. Trebilcock, 91 U. S. 45, 50; Chu Pawn v. Irwin, 82 Hun, 607, 610, 31 N. Y. Supp. 724; Moran v. McLarty, 75 N. Y. 25.  He was therefore not only notified in plain print, but he signed an agreement to the effect, that the note which he must give for the range was a $69 note, and that any change from that price made by the salesman, either by agreement, alteration, or erasure, was in direct violation of such salesman's powers as an agent, was utterly without authority, and would be inoperative as against the principal, from whom the purchase was made.  It cannot be said that the agreement which he then signed was the paper as altered by the salesman from $69 to $64, because he contracts in the very paper itself that such alteration is without authority and of no effect.  And his acceptance and execution of that bill of sale, and his retention of the range, were an election on his part to make the purchase on the terms contained in the printed and unaltered contract.  It makes no

difference that this written contract was not shown him until after the selling agent had agreed to let him have the range for $64, and he had executed the note under such an arrangement.    When he was called upon to execute that writing, he discovered the only terms upon which the principal was willing to sell.    He was notified that the principal had but one price, and that the agent had no authority to make any other; and it was his duty thereupon to have recalled his note, and refused to take the range, unless he was willing to give the price and accept the terms as printed in the bill of sale tendered him.    He did not recall his note, but retained the range and executed the agreement; thus securing to himself the benefit of the seller's guaranty, and obligating himself not to transfer the range till paid for.    Clearly, he took and held the range under that bill of sale, and the contract between himself and the seller was as printed therein.    All the talk on the part of the agent about selling for $64 was merged in that printed contract.    Engelhorn v. Reitlinger, 122 N. Y. 76, 81, 25 N. E. 297. His alteration of the price therein specified was utterly void, and was agreed to be so over the defendant's own signature.    It is to be noticed, also, that the defendant does not claim to have been ignorant of the terms of the agreement so signed by him.    He says:   "At that time I did not particularly notice it.    I did not read it all.    I don't think I noticed the red print on the back of it."    He also testified: "I don't think I read all the red print on the back of the agreement, called the 'Special Notice,' at the time I got it.    I think it was on there at the time I got it."    This is the full extent of his claim that he was ignorant of the terms of the contract he signed; and in the absence of any presumption, even, it would hardly justify a finding that he was not cognizant of the full and precise language of such contract.    Assuming, then, as we must, that the contract under which defendant purchased the range was the printed one, signed by himself and the payee of the note, he was obligated to execute and deliver to the payee just such a note as is found upon the face of the one he did execute.    And any agreement indorsed upon the back thereof, to the effect that such note was to be binding for the sum of $64 only, was a variation of the actual contract, and was utterly nugatory as between himself and the payee.    I concede that an agreement limiting the maker's liability upon a note might be indorsed upon the back of it, and would be read as a part of the note, if such agreement was put there to make it conform to the real contract between the maker and the payee.    But, if the real contract was expressed upon the face of the note, any indorsement upon the back, tending to alter or modify it, put there by the maker or any person not authorized to make such change, could not be used as a lawful modification of the note, and hence could not be read into the note as a part thereof.    Suppose the defendant in this case had executed and delivered this note without any indorsement thereon, but the agent had executed and delivered to him a written agreement to the effect that only $64 should be collected thereon, and had signed thereto the payee's name.    It seems clear that such an agreement would not, as against the payee, bar a recovery for the whole amount of the note. The agent's want of authority to make such an agreement would be

too plainly established by the bill of sale under which defendant purchased. And, if the agent should repossess himself of that agreement and destroy it, it could not be said that he had thereby, in any material part, affected the actual contract between the maker and the payee. For the same reason, I conclude that a destruction of the indorsement placed by the agent upon the back of this note does not change the contract between the maker and the payee, either as expressed by the note itself, or as actually made between them. The note, as expressed upon the face of it, and the printed bill of sale, constituted the contract between the maker and the payee, and the indorsement upon the back of the note was but an attempt to modify the terms of that contract by a separate and unauthorized agreement between the maker and an unauthorized agent. As between the parties, the note was just as operative for $69, with the indorsement on, as it would have been had it never been put on, and hence such unauthorized indorsement never became any part of the note. Its alteration therefore was not an alteration of the note, and its destruction did not affect the contract between the parties.

But if it be conceded that under the circumstances the contract of the agent must, as against this defendant, be held binding upon his principal, and the indorsement on the note must therefore be deemed a part of the note, the question arises whether, under the evidence, it can be said that a defense has been established against the entire note. Clearly, as against his principal, the agent exceeded his authority in agreeing to take less than $69 for the range, and in writing upon the note anything that would operate to reduce defendant's liability to less than that amount. And if such agent himself obliterated such indorsement before delivering the note to his principal, and such act was done without the knowledge or consent or ratification of such principal, it would seem that the alteration complained of was the act of an unauthorized third person, and that, therefore, it was not operative to avoid the note. Gleason v. Hamilton, 138 N. Y. 353, 34 N. E. 283. It cannot be justly said that an agent who, having made an indorsement that he had no authority to make, obliterates it, in order to conceal from his principal the unwarranted act, is acting for his principal in so doing. Concede that the note was a valid obligation for $64 only, against the maker, when delivered to the agent; it cannot be avoided by the maker on account of the alteration complained of, without it appears that some person interested in the enforcement of the note has made that alteration. 1 Greenl. Ev. § 566; Waring v. Smyth, 2 Barb. Ch. 133; Martin v. Insurance Co., 101 N. Y. 498, 503, 5 N. E. 338. And when the note in its unaltered condition is not delivered to the payee himself, but to an agent of his, who has a personal interest to make the alteration, and the alteration is such that when made it is not visible, but leaves the note apparently intact, there is no presumption that such alteration was made after it came to the payee's possession. The payee himself may not, therefore, on such evidence alone, be charged with the unlawful act. Under such circumstances, the maker who claims the forfeiture flowing from an unlawful alteration must go further, and show that the note reached the payee in the same condition in which it left his hands.

The agent may have altered it before he surrendered it to his principal, and, under the circumstances of this case, was very likely to have done so. There is no evidence or presumption that he did not. If he did, such alteration would not avoid the note, and hence there is no evidence upon which the note can be declared void.

These considerations lead to the conclusion that, on the evidence, no defense was made to the note in question, and the judgment for defendant should be reversed.

MERWIN, J., concurs in the result.

LANDON, J. I concur in the result. I doubt whether the plaintiff, who does not disaffirm the acts of the payee's agent in obtaining the note, but seeks their fruits, can object that the indorsement was unauthorized; but he can object that the erasure of the indorsement, if made by the agent, was unauthorized, and therefore I concur in the last ground of the opinion of the Presiding Justice. I think the evidence as to the ink eradicator was improperly received, since evidence of the existence of means is irrelevant, unless accompanied by some evidence of their use. The defendant testified that the indorsement was upon the note when delivered. The note itself was produced in evidence. It was also exhibited upon the argument before us. It shows no evidence of an erasure. To prove that it might have been removed by the ink eradicator without leaving any trace of its existence or erasure was to suggest to the jury that the indorsement had thus been removed,—a suggestion which the jury seem to have adopted. The suggestion was no evidence of the act.

HERRICK, J. I dissent. The plaintiff, having purchased the note after it was due, took it subject to all defenses the defendants would have had against the payee, and stands in the same position that the range company would if it was plaintiff. If this was an action wherein the title to the range was in question, then the reasoning of Justice PARKER would be conclusive. For I concede that the agent had no right to make the sale for less than $69, and the defendants, I think, must be held to have notice of the limitations upon his agency. The range company could have repudiated the sale for less, and have returned the note. By retaining it they ratified the transaction. The note and the indorsement upon it made at the time of signing the note, and before its delivery, constitute together but one instrument. The defendants can only be held liable upon the instrument signed by them and received by the agent, not upon one they did not sign or agree to, no matter whether the agent was authorized to accept such an instrument or not. As a matter of fact, they did not, as the jury has found, become parties to such an instrument as the plaintiff claims was the only one the agent was authorized to receive. The instrument sued upon is not the one signed and agreed to by the defendants. The defendants are not responsible for the change. They have had no opportunity to make any alteration themselves. There is no evidence as to the condition of the instrument when it came into the possession of the range company, and there is nothing from which we

can infer that the change was made by the agent, and I do not think that we have the right to assume that he made it. But, even if the agent did change it, the defendants' liability is still no different. He was not their agent, and it is not the instrument they signed. The evidence as to chemicals and the test made in court, I think, was competent. . The defendants had sworn to an indorsement upon the instrument. The instrument produced had none, and, so far as appearances indicated, never had one upon it. The note so produced, with no sign or mark that there had ever been any indorsement upon it, and nothing to show that anything had ever been removed from it, was something calculated to throw doubt upon the defendants' story of the indorsement. The evidence was competent as corroborative of the defendants' testimony. It went to show that it was possible, by the use of chemicals, to remove an indorsement without injuring the fiber of the paper, and without leaving any apparent sign. Those facts are very material, for proof that an indorsement could not be removed without injuring the fiber of the paper, nor without leaving some trace, would have been utterly destructive of the defendants' evidence as to there ever having been any indorsement upon the note. Evidence, therefore, that it could be so done, was competent as corroborative of his testimony. Lindsay v. People, 63 N. Y. 143–157. I can see no objection to making the test in court. I apprehend that the testimony of a chemist would be received to show that there are chemicals that will remove ink marks from paper without leaving any ink or stain, and without injuring the fiber of the paper. Why not, then, receive an actual demonstration of that fact from any one able to make it? The fact that the jury might think that the holders of the note might have used the particular chemicals used to make the experiment or demonstration upon the trial is not an answer to the question as to whether such evidence is competent or material. The judgment should be affirmed.

PUTNAM, J., concurs.