ANNIE M. BURNS, Appellant, *v.* THOMAS J. CROWLEY, Respondent.

First Department, July 1, 1932.

*William J. Killea* of counsel [*Thomas R. Putsche*, attorney], for the appellant.

*Emanuel Tacker* of counsel [*William H. Hickin*, attorney], for the respondent.

McAVOY, J. This action is for damages for an alleged breach of contract of lease. The complaint states that the defendant, under a written indenture of lease, executed by him as tenant and by

the plaintiff Annie M. Burns as landlord, agreed to pay the sum of $4,620 as rent for the period commencing March 1, 1929, and ending May 1, 1930. The plaintiff sought a judgment for the entire rental sum of $4,620, the defendant never having taken possession of the premises in question.

The defendant's negotiations were had with a representative of Fish & Marvin, real estate agents for the owner of the premises.

After the preliminary negotiations, a Miss Sivalls, an employee of Fish & Marvin, drew a lease reciting therein the name of William J. Burns as landlord, and sent it to the defendant for his signature.

The defendant signed the lease as so prepared with the name of William J. Burns as landlord and returned it so executed with his check for a month's rent to Fish & Marvin on December 28, 1928.

On January 6, 1929, after the defendant and his wife had visited the premises, they found that a storm had flooded the place and decided not to enter into occupancy and so notified plaintiff's representative.

After the defendant had sent his executed lease to plaintiff's agent, Miss Sivalls " changed the name [in the executed lease] from William J. to Annie M. Burns." The defendant never at any time " wrote or stated orally that he consented to the change."

Plaintiff's agent sent the changed lease to the defendant on January 7, 1929, with a letter.

The contract of lease on which plaintiff relies was never entered into by the defendant as a party thereto and he cannot be held without his consent.

The defendant cannot be said to have accepted the new offer comprised in the forwarding of the lease and letter of January 7, 1929, by a so-called " acquiescence " which the plaintiff claims is evidenced by the fact that the defendant when he received the new changed lease on January 8, 1929, did not voice an objection. We do not find any acceptance of such an offer manifested by any overt act of defendant.

The alteration of the landlord's name in the lease, after being signed and delivered by the defendant, without defendant's consent, voided the lease.

The judgment should be affirmed, with costs.

FINCH, P. J., and MARTIN, J., concur; O'MALLEY and TOWNLEY, JJ., dissent and vote to reverse and direct judgment for plaintiff as prayed for in the complaint.

O'MALLEY, J. (dissenting). The action is to recover damages for an alleged breach by the defendant of a lease under seal of real property. The complaint was dismissed at the close of the evidence

upon the ground that the plaintiff failed to show an existing lease between the plaintiff and the defendant.

The facts upon which the decision is predicated present little dispute. The plaintiff is the owner of a house located in the village of Briarcliff Manor, Westchester county, N. Y. In December, 1928, the defendant and his wife, after inspecting the premises, agreed to take a lease of the property for fourteen months commencing March 1, 1929, and ending May 1, 1930. The lease was negotiated through a firm of real estate agents who later prepared a lease in duplicate. On December 19, 1928, one copy was sent to the defendant for his signature and the other was forwarded to William J. Burns, who was recited in the lease as the owner and lessor and who, at the time, was residing with the plaintiff in the State of Florida. On December 29, 1928, the defendant signed his copy and returned it to the agents, accompanied by his check for the rent falling due March 1, 1929.

When the duplicate copy reached Florida, the plaintiff signed it and returned it to the agents. When this duplicate was returned, the agents substituted in both duplicate copies the plaintiff's name for that of her husband, William J. Burns, as lessor, and on January 7, 1929, returned to the defendant his duplicate copy signed by the plaintiff. In an accompanying letter the agents stated: " Mr. Burns has informed us that the property is in the name of Mrs. Annie M. Burns and the leases have therefore been changed accordingly. All future rent cheques should be made payable to Mrs. Burns." The defendant retained the lease without objection or protest of any kind. However, he refused to take possession of the premises upon the ground that after the execution of the lease he discovered that the premises were uninhabitable.

As a first defense to the plaintiff's cause of action the defendant pleaded that no lease existed between him and the plaintiff. This defense was predicated upon the alteration in the lease made in the manner and under the circumstances heretofore discussed. His second defense was to the effect that he was induced to sign the lease in reliance upon the representation of the agents that the house was properly constructed and in thorough repair and fit for habitancy, which representations were false and untrue. A third defense was to the effect that after the lease was signed the premises became uninhabitable and unfit for occupancy because of injury by the elements.

In support of the second and third defenses the defendant gave evidence tending to show that on visiting the leased premises on January 6, 1929, he discovered that the roof leaked and that a quantity of water had entered the premises, rendering them wholly

unfit for habitation. He testified that when he first inspected the premises it was late in the day and there was insufficient light to enable him to make a thorough investigation; that he was assured by the agent that he would find the premises satisfactory in every way and that he agreed to take the lease solely upon condition that the representations made by the agent were true.

The defendant's evidence tended to show that the representations testified to by the defendant were not made and that the premises were in a habitable condition upon the date of the commencement of the lease, March 1, 1929. While admitting that there was a certain degree of dampness on January 6, 1929, plaintiff's evidence showed that this dampness entirely disappeared after the windows and doors of the house were thrown open and that the defendant was assured that such a result would obtain if the house, which had been unoccupied and closed for several months, was given a proper airing

Upon this issue the trial court found, upon sufficient evidence, as we view the testimony, that the defendant had not established his second or third defenses. The first defense, however, was sustained and the complaint dismissed for the reasons already noted.

The defendant, it is clear, did not sign the lease relying on the supposition that William J. Burns was the owner and lessor. All that defendant was interested in was obtaining a lease of the specific property on terms acceptable to him. The change made after execution in the body of the lease by the substitution of the name Annie M. Burns in place and stead of William J. Burns, as lessor, merely carried out the intention of the parties. It was, therefore, the mere correction of a scrivener's error properly made to conform the body of the instrument to the signatures. Even regarded as an alteration, it was not a material alteration and hence would not void the lease even though it was a specialty. (*Martin* v. *Tradesmen's Ins. Co.*, 101 N. Y. 498; *Levy* v. *Arons*, 81 Misc. 165; 3 Williston Cont. §§ 1901, 1902, 1906.)

Moreover, it must be remembered that the defendant did not deny that a valid lease had been entered into between the parties when the dispute first arose between them. On the contrary, in a letter he stated that the lease was made in perfectly good faith and that he had had every intention of living up to its terms. By thus retaining the lease in its altered form without protest he impliedly, at least, ratified and adopted any alteration made therein.

It follows that the judgment appealed from should be reversed, with costs to the appellant, and judgment directed for the plaintiff as prayed for in the complaint, with costs.

TOWNLEY, J., concurs.

Judgment affirmed, with costs.